# W. H. THOMPSON v. W. D. RIDELSPERGER ET AL.

## APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued May 7, 1891—Decided October 19, 1891.

1. In solving the question as to the purpose and effect of an offer of a deed under which defendants in ejectment claim, where there is a disagreement of counsel concerning it and no bill of exceptions affording official information, little consequence can be attached to what appears on the stenographer's notes.

2. At all events, the offer is an offer of a deed. Being admitted without objection, the deed must speak for itself; and if, when examined, it does not corroborate the stenographer's notes of the alleged statement of counsel as to its effect, such statement noted will not overcome the language of the deed.

(a) Plaintiff in ejectment, for a lot of three acres, claimed under a lease for oil purposes executed to C. G. Beaumont and J. B. Drake, in 1882, containing a condition that the lessees should commence a well on the premises within twenty days, and prosecute the drilling thereof with due diligence to success or abandonment.

(b) Defendants claimed under a deed executed to them by the lessors, in 1889, expressly subject to certain leases for oil purposes, inter alia, to "J. Beaumont, three (3) acres," without further description or identification of the lease, in the deed, either by reference to its date, place of record, number or subdivision:

3. In such case, it was error in the trial court to instruct the jury, as matter of law, that the grantees in the deed took subject to the lease under which the plaintiff claimed. Whether or not the lot leased and that conveyed were identical, could be determined only by extrinsic testimony necessarily for the jury.

4. Moreover, the defendants having adduced testimony tending to show

Statement of Facts.

that a well drilled by the lessees under whom plaintiff claimed, though within the time specified, was not within the lines of the lot in dispute and did not save the lease from forfeiture, it was error to direct a verdict for the plaintiff.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 410 January Term 1891, Sup. Ct.; court below, No. 19 March Term 1890, C. P.

On January 4, 1890, W. H. Thompson brought ejectment against W. D. Ridelsperger, L. M. Ridelsperger, H. P. Ridelsperger and C. H. Shurmer, for a lot of land described in the præcipe by posts, courses and distances, and as containing three acres, more or less, and known as lot No. 53, subdivision of lot No. 528. Issue.

At the trial on February 13, 1891, it was admitted that C. A. and D. Cornen were the common source of title, and the plaintiff then put in evidence a lease from C. A. Cornen and D. Cornen to C. G. Beaumont and J. B. Drake, dated March 25, 1882, for a lot of land described by the same posts, courses, distances, and contents as the lot in dispute was described in the præcipe, with the exclusive right to bore for oil, etc., thereon, for the term of fifteen years, upon the condition, inter alia, that one well should be commenced within twenty days and prosecuted with due diligence to success or abandonment. Assignments of this lease from Beaumont and Drake to Joseph Seep, dated June 9, 1882, duly recorded, and from Joseph Seep to W. H. Thompson, the plaintiff, dated April 11, 1889, also duly recorded, were then shown, and that the defendants were in possession of the land in controversy. J. B. Drake then testified for the plaintiff that, under their lease from the Cornens, Beaumont and Drake at once commenced operations and drilled a well that had been producing ever since. On cross-examination, the witness testified that the lessees were shown the starting point of the lines of the lease by "Mr. Cornen," and that they had traced the lines by the stakes from the starting point thus given, and drilled the well accordingly. The plaintiff then rested.

In their case in chief, the defendants after opening their

Statement of Facts.

'case made the following offer, as printed in the appellants' paper-book:

"Defendants' counsel offer in evidence record of a deed from C. A. Cornen and wife, D. Cornen and wife, and P. Cornen and wife, to the defendants in this case, dated June 28, 1889, recorded in Deed Book 68, at page 22. It covers the land described in the writ;—consideration, $65,000." *

The offer was admitted without objection. This deed conveyed the whole of lot No. 528, containing 165 acres, more or less, and a part of lot No. 497, containing 37 acres and 140 perches, with certain reservations immaterial here, the deed containing the following words: "This conveyance is made subject to the following leases for oil purposes, viz.: Gorman Bros., six (6) acres; Collins & Cochran, six (6) acres; Ferguson et al., nine (9) acres; and J. Beaumont, three (3) acres."

The defendants then testified, as did also surveyors who had run the lines as given in the lease to Beaumont and Drake under which the plaintiff claimed, that the well referred to by J. B. Drake as having been commenced at once after the lease was executed, now known as the Thompson well, was not within the lines of lot No. 53, the testimony tending to show that the lot known as the church lot, on the rear line of which was the starting point of the lines of the lot in dispute, did not reach to the lines of lot No. 53, and that said well was between the two lots,—not upon either.

In rebuttal, the plaintiff called George O. Cornelius, a surveyor, who testified that he was employed to do some work by " Mr. Cornen," at the "location" in the rear of the church lot: "Q. Did you hear a conversation between Mr. Cornen and Mr. Drake, of Beaumont and Drake, in regard to the location of the well? A. I did, yes, sir."

The plaintiff proposed to show by this and other witnesses, "that the post from which the lease purports to start was pointed out and agreed upon by the parties, at the easternmost corner of the church lot, the fence post of the fence of that lot, and that it left to the west of it the well in question;

---

* It was alleged in the appellee's counter statement that to the above offer was added, on the stenographer's notes, the following words: " The conveyance is made subject to the lease in question, of three acres." See opinion of the court, post, 422.

that the lessees, Beaumont and Drake, were in quiet possession, and that they and their successors in the title have been in possession of that well and of the lease as defined by commencing at that point, instead of the point where the surveyors of the defendants have started in laying out the lines and boundaries of lot 53, and were so in possession when the deed was made by the Cornens to the defendants in this case ; and that this agreement between the parties and the conversation to be proven, took place before or at the time the lease was made."

Defendants objected to the proposition, as irrelevant and incompetent; and for the further reason that the abstracts of title gave no notice of the matter proposed to be proved.

By the court: Objection overruled, evidence admitted; exception.[1]

Under this offer, the witness and others testified in substance, that the starting point, the northeast corner of the lease, was fixed upon the ground by the Cornens and their lessees, Beaumont and Drake, at the southwest corner of the church lot, whence the northeast line of the lease was run southeastward to a post, and that the well afterwards drilled by Beaumont and Drake was located by the Cornens and themselves a little west of this line, so as to be upon the lease as described by the lines run from said starting point.

At the close of the case on the evidence, the court, METZGER, P. J. 29th district, presiding, charged the jury in part as follows :

It appears that, in 1882, C. A. Cornen and D. Cornen, owned a piece of land in Mead township, known as lot No. 528, containing 160 or more acres, and they may have owned other property there. But, however, they afterwards subdivided this tract of land into small divisions, numbering each of them, among which was No. 53. On the twenty-fifth of March, 1882, they leased this subdivision No. 53, to parties by the name of Beaumont and Drake, for the purpose of boring for oil, I believe, for the period of fifteen years from that date. Among other things, it was provided in this lease that they should commence drilling an oil well, and locate it at such place as directed by the lessors. This contract of lease, was assigned by Beaumont

Charge of Court below.

and Drake, on the ninth of June, 1882, to a man by name of Joseph Seep; and Joseph Seep, on the eleventh of April, 1889, assigned his interest in the lease, to the plaintiff in this case, W. H. Thompson.   In the meantime, on the twenty-eighth day of June, 1889, C. A. Cornen and wife and D. Cornen and wife, who are the lessors as you have heard, conveyed this tract, known as No. 528, and other property, to the defendants in this case.   [In that conveyance, however, the Cornens reserve this lease, and made the conveyance subject to this lease.] [4]

Now, it seems that the actual lines, as contended by the defendants at least, of No. 53, would not have included the place where the plaintiff, or those under whom he claims, drilled the well in pursuance of the lease that I have referred to.   [But, as I have said, the defendants did purchase, however, subject to the lease.] [5]   As far as the facts are concerned, it appears that when this lease was made in 1882, the parties went upon the ground, and the lessors fixed, and agreed, in fact, with their lessees, Beaumont and Drake, at the time, that the corner of their lease was to be the southeast corner of the church lot, and that it was then to run in a southeasterly direction to a certain post.   And it is also the undisputed evidence in this case, that this well was directed to be located by the lessors near the line thus fixed by the parties, the lessors and lessees,—I believe within the distance of about sixteen or eighteen feet of the line. And it is further undisputed that the lessees did commence drilling the well at that point within twenty days, as required by the terms of their lease.   [Therefore, it is clear from the testimony in this case, that the lessees complied with the terms of their lease,] [2] and the plaintiff has the benefit of the compliance by his predecessors with the terms of this lease.   And the sole question now is, whether he should be prevented from recovering, if the well does not happen to be located within what would be the actual lines upon the ground of No. 53.

Now, it is undisputed that the well was located there by the lessors, and that it was accepted by the lessors as in compliance with the terms of the lease.   It is not controverted, so far as the lessors are concerned, that they are estopped from making any defence or any claim that the terms of the lease have not been complied with, and the only question now is, how does it affect the defendants?   [The defendants purchased subject to this

Charge of Court below.

lease; they therefore had notice that there was a lease, and the very fact that the conveyance to them was made subject to the lease, indicated that there was a valid, subsisting lease for lot No. 53. Now, that in itself, in our judgment, was sufficient to put the defendants, when they made their purchase, upon inquiry as to whether the plaintiff had complied with the terms of the lease or not. They are not innocent purchasers without notice, according to our view.] [6]

There is in this case, the additional fact that this very well, that was located at the point where it is by the direction of the lessors, was, at the time this purchase was made by the defendants, in the possession of either the plaintiff or his immediate predecessor, Joseph Seep. There was a well there in full operation, it was a flowing well at the time; there was a derrick, engine house and tank there. There was open, notorious and visible possession; or at least all the indications of such an open, notorious and visible possession as should affect any purchaser with constructive notice, and put him on inquiry.

[Viewing the case as we do, we find no facts to submit to you, and therefore direct that you find a verdict for the plaintiff, for the land described in the writ.] [3]

The court is requested by the defendants to charge you:

1. There is no evidence from which the jury can find that the defendants, at the time of the purchase of the land including the land in dispute, had any knowledge, or any means of obtaining knowledge that the Beaumont and Drake well was upon the land described in the lease from the Cornens to Beaumont and Drake; or, that the same had been located as and for a well on subdivision No. 53.

Answer: We affirm this point; but we think that it is not material, as we view the law governing the case.[7]

2. If the jury find, from the evidence, that the defendants were the bona-fide purchasers for a valuable consideration without notice of subdivision No. 53, of the lands of the Cornens, as said subdivision is described by the terms of the lease, and that the well of Beaumont and Drake was not on said subdivision No. 53, as the same is so described, at the time of defendants' purchase, the fact that the Cornens located a well on other land, and that Beaumont and Drake sunk the same, would estop the Cornens from claiming a forfeiture by

Opinion of the Court.

reason of failure to sink a well on No. 53 as provided by the lease ; but the fact that such location was made by the Cornens, and Beaumont and Drake, on other land than No. 53, and without any knowledge of the arrangement or understanding between the Cornens and Beaumont and Drake, would not affect the defendants here, and they would be entitled to insist upon the forfeiture for not sinking the well on No. 53 as provided by the terms of the lease, and the plaintiff cannot recover.

Answer : We refuse to affirm this point.[8]

3. There is no evidence in the case that the plaintiff, or any of his predecessors in title, was in possession of the land described in the writ at or before the time that the Cornens conveyed to defendants.

Answer : I think this is true, so far as No. 53 is concerned; but we have already, in our charge, given you other reasons why we think that the plaintiff should recover.[9]

—The jury returned a verdict for the plaintiff, as directed. Judgment having been entered, the defendants took this appeal and assigned for error :

1. The admission of the plaintiff's offer.[1]

2–6. The portions of the charge embraced in [ ] [2 to 6]

7–9. The answers to the defendants' points.[7 to 9]

*Mr. W. D. Brown* (with him *Mr. J. H. Donley, Mr. George N. Frazine* and *Mr. James W. Wiggins*), for the appellants.

*Mr. Wm. E. Rice* and *Mr. W. D. Hinckley* (with them *Mr. Charles Dinsmoor, Mr. James Cable* and *Mr. Charles A. Peterson*), for the appellee.

OPINION, MR. JUSTICE GREEN :

In the appellee's paper-book it is alleged that the appellants omitted to print a part of the offer of their deed, and that the omitted part was in these words : " The conveyance is made subject to the lease in question of three acres." It is further said by the counsel for the appellee, that when the defendants offered their deed in evidence the counsel making the offer stated in open court that the deed was subject to the lease in question, and that this was included in the offer, and placed

Opinion of the Court.

on the record. The counsel for the appellants, in their reply
to the appellee's argument, deny this statement, and assert
that one of the counsel for the appellee, at the time the de-
fendants offered their deed, made a side-remark in the words
above quoted, and that the words crept into the stenographer's
notes without their knowledge, and that they were no part of
their offer. They further call upon the counsel for the appel-
lee to deny, if he will, that he was the author of the words in
question. It is lamentable and reprehensible that there should
be such a conflict of statements between counsel. The offer
of the deed was not objected to, and hence there is no bill of
exception which can settle this question of veracity, and we
can have no official knowledge of the truth of the matter.*
The subject of the controversy is not trivial, but vital. If the
deed was strictly subject to the lease in question, the defend-
ants took their deed with notice and were subject to the duty
of inquiry, and were chargeable with knowledge of whatever
the inquiry would have disclosed. The court below assumed
that this was so, and the appellants urge that this assumption
was error. In consequence of this assumption the court with-
drew the case from the jury, and instructed them to find a ver-
dict for the plaintiff. If it was error to give such binding
instruction to the jury, the judgment must necessarily be re-
versed.

In solving the question whether the defendants took their
title expressly subject to the lease in controversy, but little,
if any, consequence can be attached to what appears in the
stenographer's notes. There is merely a statement by the
stenographer that the deed was subject to the lease. The ste-
nographer is not a witness; he was not of counsel for either
party; he had no authority to bind either party by anything
he might say. The offer of the deed was an offer to give a
deed in evidence, and nothing more. The deed was received
without objection, and the whole purpose of the offer was then
subserved. It is incredible that the defendants' counsel then
proceeded to give away their whole case by the entirely un-
necessary and uncalled for declaration that the deed which
they offered was subject to the lease which was the subject of

---

* See foot-note, ante, 415.

Opinion of the Court.

the controversy. Stenographers are not infallible. They are just as likely to make mistakes as other persons; and when they are merely making a declaration of their own as to a fact occurring in their presence or hearing, not being under oath, and not being examined or cross-examined, and the truth of their statement is denied by the party sought to be bound by it, as a matter of course such statements cannot be regarded by the courts as of any weight in determining the contention. But, apart from all this, the deed must speak for itself; and if, when examined, it corroborates the stenographer's statement, the party affected will be bound by it, not because of what the stenographer said, but because of what the deed itself declares; and, on the other hand, if it does not corroborate the stenographer, it will scarcely be contended that the remark of the stenographer will outweigh the language of the deed.

If, now, we recur to the deed, we find that it contains these words: "This conveyance is made subject to the following leases for oil purposes, viz.: Gorman Bros., six (6) acres; Collins & Cochran, six (6) acres; Ferguson et al., nine (9) acres; and J. Beaumont, three (3) acres." There is no other language but this in the entire deed on this subject. The deed is made by C. A. Cornen and wife, D. Cornen and wife, and Peter P. Cornen and wife, to W. D. Ridelsperger, L. M. Ridelsperger, H. P. Ridelsperger, and C. H. Shurmer; is dated June 28, 1889, and is for lot No. 528, containing 165 acres, more or less, and for part of lot No. 497, containing 37 acres and 140 rods, more or less.

Now, the lease which is claimed by the plaintiff as the source of his title is a lease dated March 25, 1882, made by C. A. Cornen and D. Cornen to C. G. Beaumont and J. B. Drake, for a lot or piece of ground in Mead township, Warren county, Pa., containing three acres, more or less, known as lot No. 53 of subdivision of lot No. 528. The name of J. Beaumont does not anywhere appear in this lease. In the deed the reservation is of a lease to "J. Beaumont, three (3) acres," and that is all. There is no description of this lease in the deed. It is not referred to by its date or its place of record, nor by its number 53, nor by the number of the subdivision of which it is a part. In other words, there is no identification of the territory covered by the lease, and the name of the lessee is not the name

of either of the two lessees of the lot in question, nor does the name of either of those two lessees appear in the lease that is reserved. Upon the face of the papers, the lease and the deed, it is impossible to say that the lease reserved is the lease in controversy. It was therefore error in the learned court below to say, as a matter of law, that they are identical. Whether or not they are identical is a matter which can only be determined by extrinsic testimony, and the credibility and force and meaning of that testimony is necessarily to be determined by the jury. They may be the same, but whether or not they are the same is not a matter of law but of fact, and should be determined by the jury, and not by the court. We therefore sustain the third, fourth, fifth, and sixth assignments of error.

We can hardly sustain the first assignment, as the offer included the act of the lessors in locating the lot so that the Beaumont and Drake well was upon it, and that they so agreed with the lessees; and, as such location would certainly bind the lessors, who could not claim a forfeiture, it might bind the present defendants, claiming under them. It would not be incompetent testimony, but yet it might not bind the defendants. That would depend upon what was the true location of lot No. 53, and, if not, then whether the defendants knew of the acts of the lessees in locating the well where it is, as being a location within the lines of lot No. 53. If the defendants had such knowledge at the time of or before the inception of their title, they would be bound by it; but the true location of lot No. 53 is very much in dispute. According to the testimony of the defendants' surveyors it does not include the well, and, if that testimony is believed, the defendants would not be bound by the location of the well as a compliance with the terms of the lease, unless they had knowledge of the assent of the lessors to that location, and the acceptance of it by them as a compliance with the lease. It must be confessed that the knowledge of the defendants of the acts and declarations of the lessors in that regard before the inception of their title can scarcely be regarded as established by the testimony. Certainly it is not so established as to justify the court in deciding it. All the defendants testified that the Drake well was not within the lines of lot No. 53, as those lines are indicated in the lease, and that they did find a post corner, outside the church lot, start-

ing from which, and running the lines of the lot, the Drake well was excluded.   If any proof of the location of the well as a performance of the condition by the lessees with the consent of the lessors, and accepted as such by the latter, was made in such manner as to give notice thereof to the defendants, before their title was acquired or at the time of its acquisition, the effect of that proof would be necessarily for the jury under proper instructions from the court.   But the case was not tried in that way by the learned court below.   On the contrary, the court assumed that the defendants had notice when they purchased, that the well was erected within the limits of the lot 53, because they bought subject to the lease, and the well was already there with all its appliances, and in full operation.   Of course, this would be correct if the well was within the true location of lot 53, but this is the very matter in dispute, and must necessarily be determined by the jury.   We therefore do not sustain the first assignment, but do sustain the second and eighth; and the seventh and ninth are sustained, because, while the court affirmed the defendants' first and third points, they took away all the effect of the affirmance by saying they were not material, and that the case must be disposed of according to the views of the court on the other matters mentioned in the charge.   As these matters involved questions of fact which should have been submitted to the jury, we are of opinion the judgment must be reversed.

Judgment reversed, and new venire awarded.